Paul Steven SCHRADER, Steven L. Dunbar, Glenn E. Lawson, Ralph Bodle, and Francis Behler, Appellants–Plaintiffs,

v.

ELI LILLY AND COMPANY,
Appellee–Defendant.

No. 12S02–9408–CV–682.

Supreme Court of Indiana.

Aug. 16, 1994.

Rehearing Denied Oct. 31, 1994.

Douglass R. Shortridge, Indianapolis, James R. Martin, Kokomo, for appellants.

Roberta Sabin Recker, Robert K. Stanley, Ellen E. Boshkoff, Baker & Daniels, Gayle L. Pettinga, Eli Lilly and Co., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

DeBRULER, Justice.

In this case, the court of appeals consolidated multiple actions for defamation arising from the same factual circumstances. Appellee Eli Lilly and Company discharged six employees from its Tippecanoe County, Indiana, warehouse operation. Five of the discharged employees filed suit against Lilly, claiming that Lilly had defamed the employees when informing the remaining Lilly employees about the terminations. In each action, Lilly moved for summary judgment, and the trial courts granted the motions. The five former employees appealed, and their cases were consolidated on appeal. The court of appeals affirmed in part and reversed in part. *Schrader v. Eli Lilly and Co.* (1993), Ind.App., 621 N.E.2d 635. Lilly petitions for transfer. Transfer is granted.

Rumors about theft arose at the Tippecanoe Laboratories of Eli Lilly and Company. In the summer of 1990, Lilly management began an internal investigation of these theft rumors and interviewed more than 30 employees. As a result of the investigation, Lilly fired six employees, placed several others on probation, and reassigned some employees within the plant.

For some time after Lilly took these actions, rumors about the terminations lingered. A number of the 1,500 employees of the Tippecanoe Laboratories believed that the six employees were fired for stealing. A few of the rumors had specifically named one or more of the terminated employees. After the employees were fired, rumors circulated in the plant and in the surrounding community that they had been fired for stealing and that as many as 100 other employees in other areas of the plant were to be fired as well.

To quell these rumors, which were viewed as detrimental to the workers' morale, James Kleck, the Director of Lilly's Tippecanoe Laboratories, included a slide presentation in his weekly plant staff meeting for the managers of the plant on September 19, 1990. The slide presentation included the names of the six terminated employees, as well as the reasons for their separation from the company. The information contained on the slide read as follows:

### WAREHOUSE SITUATION

* MANAGEMENT REVIEW HAS BEEN COMPLETED
* RESULT:
 A) Six individuals have been separated
 * [excised from the record-not a plaintiff in this action]

| | | |
|---|---|---|
| * Frannie Behler | (Group Leader) | 26 years |
| * Steve Dunbar | (Operator) | 17 years |
| * Glenn Lawson | (Operator) | 17 years |
| * Steve Schrader | (Operator) | 20 years |
| * Ralph Bodle | (Supervisor) | 29 years |

 B) Various disciplinary actions were taken with other employees

REASON FOR SEPARATION:
 Loss of confidence in those individuals as employees of Eli Lilly and Co.
FAIR/FIRM/CONSISTENT
RESPECT FOR THE INDIVIDUAL
CORE VALUES OF LILLY—TRUST, HONESTY, ETC.
MANAGEMENT PROFESSIONALISM

---

One manager took notes on the contents of the slide presentation and had his secretary type the notes for him. The manager then passed the typed notes to various department heads, supervisors, and employees. One of the department heads posted the notes on a bulletin board in Building T–6. The relevant section of the typed notes read:

6. Warehouse Situation—Jim Kleck
 — Six employees have been dismissed
 — Other disciplinary actions have been taken
 — The reason for separation is a loss of confidence in those individuals as employees of Eli Lilly and Company

— The process has been fair, firm, and consistent

— Respect for the individual has been an integral part of the process

— The core values of Lilly are based on trust and honesty—we must communicate these clearly

— We cannot tolerate a loss of trust and honesty as a company or as individuals

— It is over.

Appellants, in their appeal of the grant of summary judgment for Lilly, have limited their appeal to their action for libel, which is based upon the statements made in the slide presentation and the subsequent posted notes. In granting summary judgment, the trial court found three separate and independent grounds to support the summary judgment, namely, 1) the lack of publication of the statements; 2) the statements were protected by a qualified privilege; and 3) the statements were true. Each ground is independently sufficient to support a summary judgment. On appeal, appellants must successfully challenge each of these grounds for summary judgment in order to prevail. In the absence of such a successful challenge, the judgment of the trial court must be affirmed.

A summary judgment is proper only where there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189. Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Id.* On appeal from a summary judgment, the reviewing court examines the same issues, and applies the same analysis as the trial court does. However, the party that lost in the trial court has the burden of persuading the appellate tribunal that the trial court's decision was erroneous. The appellate court's role is to ensure that the non-prevailing party is not denied his or her day in court. *Id.*

To maintain an action for defamation, a plaintiff must show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140. Defamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff. *Lee v. Weston* (1980), Ind.App., 402 N.E.2d 23. The trial court did not make a determination of whether the statements carried a defamatory imputation. The first ground relied upon by the trial court to grant Lilly's motion for summary judgment was the lack of publication. In a defamation action, the plaintiff must show that the alleged defamatory matter was published, that is, communicated to a third person or persons. *Bals v. Verduzco* (1992), Ind., 600 N.E.2d 1353. The trial court held:

The undisputed, material facts show that there was no publication of the allegedly defamatory statements because the statements were intracorporate transfers of information communicated to personnel with an interest in the information.

However, for purposes of this appeal, appellee Lilly has stipulated that it had published the allegedly defamatory statements to its employees, in light of this Court's holding in *Bals*. In *Bals*, we held "that employee evaluation information communicated intracompany to management personnel may be considered published for purposes of a defamation action." *Bals*, 600 N.E.2d at 1356. Such intracompany transfers are considered published for the purpose of using such statements as the basis for a defamation claim. In the present case, Lilly agreed that the trial court's entry of summary judgment cannot be sustained because there was no publication. The trial court's first ground for

granting summary judgment, that the statements were not published, is eliminated.

█ The second ground supporting the grant of Lilly's motion for summary judgment was the qualified privilege. Assuming *arguendo* that the statements attributed to Lilly were defamatory, the trial court found that the statements were made pursuant to a qualified privilege of common interest. The privilege applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. *Bals,* 600 N.E.2d at 1356. Intracompany communications regarding the fitness of an employee are protected by the qualified privilege, in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs. *Id.* The privilege protects personnel evaluation information communicated in good faith. Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law. *Id.*

Here, appellants conceded that the alleged defamatory statements made via the overhead slide projector would fall within the qualified privilege. The appellants, in their brief, stated, "It was certainly anticipated by Employees that the court would find the original defamation in the form of the ... overhead projection would be clothed with a qualified privilege." However, appellants challenge that Lilly abused the privilege, claiming excessive publication.

█ A statement otherwise protected by the doctrine of qualified privilege may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Bals,* 600 N.E.2d at 1356 (citations omitted). Once the communication is established as qualifiedly privileged, the plaintiff then has the burden of overcoming that privilege by showing that it has been abused. *Id.* The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only. *Shallenberger v. Scoggins–Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699. In the present case, appellants attack the qualified privilege by claiming excessive publication, that is, publication to inappropriate parties.

█ The trial granted Lilly's motion for summary judgment on the qualified privilege issue. On appeal, appellants complain that the trial court erred in granting summary judgment, because appellants had presented evidence to overcome the privilege. In their brief, appellants claim that "[t]he trial court ... totally ignored the Indiana law that states once the communication is established as qualifiedly privileged, employees have the burden of and can overcome the privilege by showing it was abused." We note that in granting a motion for summary judgment, implicit in the granting of this motion is the finding that no factual dispute exists. A party moving for summary judgment will succeed only if that party is entitled to judgment as a matter of law. In resolving a motion for summary judgment, the facts alleged in a complaint must be taken as true, except to the extent that they are negated by depositions, affidavits, admissions, answers to interrogatories, or testimony presented at the hearing. *Winbush v. Memorial Health System, Inc.* (1991), Ind., 581 N.E.2d 1239. Here, the heart of our determination lies in the resolution of the legal question of whether the facts alleged support the legal conclusion that Lilly abused its qualified privilege.

In attempting to show excessive publication, appellants presented evidence that certain department heads posted notices containing the allegedly defamatory statements, so that approximately 1,500 Lilly employees would see the statements. In addition, appellants presented evidence that some 500 non-employees were routinely present in the Lilly Tippecanoe complex and had access to the bulletin boards. Appellants claim that this evidence was enough to defeat the claim

of privilege made as a basis for the motion for summary judgment.

 Appellants believe that the fact that Lilly made the allegedly defamatory statements accessible to approximately 1,500 Lilly employees exhibits excessive publication. Appellants complain that the posting of the notes from the meeting of the department heads published the allegedly defamatory statements to a large number of individuals who had no reason to receive the information. Our inquiry focuses on the question of whether the action exceeded the definition of the qualified privilege. We hold that it did not. The posted notes were a communication from the employer to employees concerning a matter that affected both. Each had common interests in the communication: job performance and job security. The reason for the communication was to preserve those interests. When Lilly management initially addressed the warehouse situation, they acted not only to inform those individuals immediately affected by the discharges—the former employees department heads and supervisors—but also to suppress rumors and speculation running throughout the Lilly Tippecanoe County complex, as well as to communicate the core values of Eli Lilly and Company. The rumors had an adverse impact on employee productivity and morale throughout the complex. There was testimony in the trial court that the rumors were widespread and pervasive throughout the entire complex. Lilly management acted to stop the rumors by issuing the statements.

 As another example of excess publication, appellants argue that posting the notes of the meeting of the department heads communicated the allegedly defamatory statements to 500 non-employees present in the Lilly complex. While Lilly has agreed that the statements it had made to Lilly employees were published for purposes of the defamation claims, Lilly has challenged appellants' contention of excessive publication with regards to the approximately 500 independent contractors who work in the Lilly complex. We note that appellants have not presented any evidence that any non-employees read the meeting notes. Rather, appellants only claim that the non-employees

were present in the complex, had access to the bulletin boards where the notes were posted, and that some independent contractors were seen, at times, reading various bulletin boards. Appellants did not present the testimony of any non-employees who had actually read the notes, nor do appellants claim that a non-employee had read the notes.

 Even assuming the statements were defamatory and were published to the non-employees, the statements were not presented in a context where the statements were understood as defamatory. The non-employee independent contractors had a transient presence in the Lilly complex, and were not subject to the rumors and gossip that were prevalent there. The notices themselves did not accuse anyone of committing any crime. The meeting notes did not list the names of the discharged employees. The posted notes themselves were not conspicuous. The notes were printed on 8½ by 11 inch paper, and the items in question were listed sixth on the meeting notes. The only context in which the statements could be understood as defamatory was within the context of the rumors of stealing. Appellants did not present any evidence that the non-employees were exposed to the statements in the defamatory context. There is no sufficient proof of the application of the alleged defamatory words to the plaintiff. Defamatory communications are those which tend to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person. We cannot say that the posted notes had any defamatory effect, because the statements could not have been understood by company outsiders in a manner that would injure appellants' reputations.

There was no material factual issue with respect to the nature of the publication. The trial court, assuming that the statements were defamatory, found that the statements fell within a qualified privilege. Appellants attempted to attack the privilege, claiming excess publication. In support of this claim, appellants presented evidence that the statements were available to approximately 1,500

Lilly employees and 500 non-employees. However, the trial court determined that appellants' showing was not sufficient to defeat the privilege as a matter of law. The undisputed facts were not sufficient to defeat the privilege. Thus, the trial court granted summary judgment in favor of Lilly. We agree that appellants have not presented evidence sufficient to defeat the qualified privilege, and affirm this ground supporting the summary judgment. Because appellants have not successfully challenged one of the independent grounds supporting summary judgment, appellants' appeal cannot stand.

For the reasons stated above, we grant transfer and vacate the opinion of the court of appeals. The judgment of the trial court is affirmed in all respects.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

SULLIVAN, J., dissents, and would deny transfer.