**COACHMEN INDUSTRIES, INC., and Sportscoach Corporation of America, Appellants–Defendants,**

v.

**James H. DUNN and Barbara H. Dunn, Appellees–Plaintiffs.**

**No. 64A05–9901–CV–47.**

Court of Appeals of Indiana.

Nov. 29, 1999.

Robert J. Palmer, South Bend, Indiana, Attorney for Appellants.

Teresa A. Massa, George W. Terrell, Jr., Charles F.G. Parkinson, Valparaiso, Indiana, Attorneys for Appellees.

1. Hereinafter, where applicable, Sportscoach and Coachmen will be referred to collectively as "Appellants."

## OPINION

ROBERTSON, Senior Judge

*STATEMENT OF THE CASE*

Defendants–Appellants Coachmen Industries, Inc. (Coachmen) and Sportscoach Corporation of America (Sportscoach) [1] appeal the judgment of the trial court in favor of Plaintiffs–Appellees James H. Dunn and Barbara H. Dunn (Dunns).

We affirm.

*ISSUES*

Appellants present six issues which we consolidate and restate as:

1. Whether the jury's verdict is contrary to law.

2. Whether there is sufficient evidence to prove special damages flowing from the Dunns' defamation claim.

3. Whether the Dunns failed to overcome the Appellants' qualified privilege by a sufficient showing that the Appellants had abused the privilege.

4. Whether the trial court erred in submitting the issue of defamation to the jury.

5. Whether the award of punitive damages is contrary to law.

*FACTS AND PROCEDURAL HISTORY*

Sportscoach was a subsidiary of Coachmen, and both companies were involved in the manufacture of motor homes. The Dunns were employed by Sportscoach in the capacities of drivers and show coordinators. In driving and delivering vehicles manufactured by Sportscoach, the Dunns were asked by the transportation manager of Sportscoach to disconnect the odometers of a number of the vehicles. In 1991, Sportscoach closed and the Dunns interviewed at Coachmen. During the interview, Barbara Dunn mentioned that the Dunns had previously been ordered to dis-

connect odometers and that they would refuse to do so at Coachmen. The Dunns were not hired by Coachmen. Following an investigation by Richard Bowers, Coachmen's corporate legal counsel, letters were sent to four Sportscoach customers discussing the odometer tampering and naming the Dunns as the responsible parties. Bowers included checks with these letters as reimbursement to the customers for the unrecorded mileage on their vehicles. The Dunns were also named on the check stubs of these reimbursement checks. The Dunns filed a complaint for wrongful termination alleging that they had been terminated based upon their refusal to disconnect odometers. The complaint was later amended to include allegations of defamation based upon the letters sent by Coachmen's corporate counsel.

Following a trial, the jury returned a verdict in favor of the Appellants on the Dunns' claim for wrongful termination but returned verdicts against the Appellants with regard to the Dunns' claim of defamation and on Coachmen's counterclaim. Coachmen then filed a motion to correct error which was denied by the trial court. This appeal ensued.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

 On appeal, a general verdict will be sustained upon any theory consistent with the evidence. *Tipmont Rural Elec. Membership Corp. v. Fischer*, 697 N.E.2d 83, 86–87 (Ind.Ct.App.1998), *aff'd*, 716 N.E.2d 357 (Ind.1999). We will neither reweigh the evidence nor judge the credibility of the witnesses, but will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Id.* Only where there is a total failure of evidence or where the jury's verdict is contrary to the uncontradicted evidence will the verdict be reversed. *Id.* Thus, Appellants labor under a heavy burden in asserting error.

## I. JURY VERDICT

### A. Truth of Statements

For their first claim of error, Appellants contend that the jury's verdict regarding the Dunns' defamation claim is contrary to law because the statements contained in the letters sent by Coachmen's corporate counsel are true.

 Appellants invite us to reweigh the evidence by pointing to evidence they presented at trial to show that the information in the letters was true. However, the Dunns presented evidence and argued just as vigorously that the information in the letters was false. Viewing the record in the light most favorable to the Dunns, we conclude the verdict is not contrary to law. The record reveals that the Dunns were ordered to disconnect the odometers rather than requesting and being "authorized" to make the disconnection as the letters state. The Dunns also presented evidence that "full responsibility" for the unrecorded mileage on the vehicles did not rest with them, as the letters indicate, because they were ordered to take this action by their superiors. Thus, this is not a situation of a total failure of evidence or a verdict contrary to the uncontradicted evidence. Rather, there is conflicting evidence as to the truth of the statements, and the jury found for the Dunns.

Additionally, the jury was instructed that truth is a complete defense to an action for defamation and that if the jury found the statements to be true, they must find for the Appellants. (Supp. R. 28). Because the jury did not find in favor of the Appellants, we can infer that the jury found the Appellants' statements to be false. We need not invade the province of the jury and reverse the verdict.

### B. Jury Instruction

Appellants allege that the jury's verdict is contrary to law because the trial court submitted an instruction to the jury which contradicts the evidence.

The trial court instructed the jury as follows:

In order to recover in an action for defamation, the plaintiff has the burden of proving the following propositions by a preponderance of the evidence:

(1) That the defendant made the following statement: that the Dunn's [sic] were fully responsible for odometer disconnects;

(2) That the statement was defamatory as that term is defined in these instructions;

(3) That the statement was made about the plaintiff;

(4) That the statement was seen by someone other than the plaintiff; and

(5) That the defendant knew the statement to be false or, believing it to be true, acted negligently in failing to determine the truth of the statement.

If you find from a consideration of all the evidence that the foregoing elements have been proved, your verdict should be for the plaintiff. However, if you find from a consideration of all the evidence that any one of these elements has not been proved, your verdict should be for the defendant.

(Supp. R. 27).

██ In their Reply brief, Appellants state that they are not arguing that the instruction was erroneous. Instead, they contend that although the instruction correctly sets forth the elements of a claim of defamation, it contradicts the evidence by asserting that the Appellants stated the Dunns were fully responsible for odometer disconnects. Appellants allege that their statement was not that the Dunns were fully responsible for the disconnection of odometers but that the Appellants *believed* that the Dunns were fully responsible.

Although Appellants attempt to avoid it, the real issue here is an allegedly erroneous jury instruction. However, Appellants do not claim to have objected to this instruction. Because Appellants have failed to lodge an objection to the giving of this instruction, the instruction has become the law of the case. *Salcedo v. Toepp*, 696 N.E.2d 426, 434 (Ind.Ct.App.1998). As such, the instruction has become the standard under which we review the case, and a jury verdict within the contemplation of the instructions given is insulated from attack on appeal. *Id.* The jury verdict in favor of the Dunns is supported by substantial evidence or reasonable inferences to be drawn therefrom; therefore, we conclude that the verdict is not contrary to law.

## II. SUFFICIENCY OF THE EVIDENCE

██ Appellants claim that the Dunns have failed to prove specific damages, an allegedly essential element of their claim of defamation. Appellants present this argument in two parts: (1) if the Dunns were defamed at all, it was a case of defamation *per quod;* and (2) a cause of action involving defamation *per quod* requires proof of special damages, which the Appellants allege the Dunns failed to prove.

Again, we employ the standard for review of a general verdict as set out above. In the present case, the record discloses the jury was instructed that "[w]here the defamatory words are in the form of libel or slander, whether defamatory per se or per quod, there is no need to plead or prove special damages if the words: (a) impute a criminal act, (b) impute a loathsome disease, (c) impute sexual misconduct, or (d) injure another in his trade, business, profession or office." (Supp. R. 20). The jury was further instructed that "words in the form of libel per se that tend to degrade another person, impeach the person's honesty, integrity, or reputation, or bring the person into contempt, hatred, or ridicule, or cause the person to be shunned are also actionable without the necessity of pleading and proving special damages. Special damages must be proved in the case of slander or libel per

quod that does not involve" one of the four categories listed above. (Supp. R. 21).

Therefore, in returning a verdict in favor of the Dunns on their defamation claim, the jury could have determined that: (1) the Dunns' claim, whether defamatory per se or per quod, fit within one of the four categories listed above (presumably category (d) injury in trade, business, profession, or office) and thus required no showing of special damages; (2) the Dunns' claim was a claim of defamation per se, thereby requiring no showing of special damages; or (3) the Dunns' claim was one of defamation per quod and that they made a sufficient showing of special damages at trial. Moreover, our review of the record reveals that the Dunns provided sufficient evidence from which the jury could find that special damages were proved. "A jury verdict within the contemplation of the instructions given is insulated from attack on appeal." *Salcedo*, 696 N.E.2d at 434. Here, the jury's verdict and decision with regard to special damages is well within the scope of the trial court's instructions. The jury verdict in favor of the Dunns is supported by sufficient evidence to support their claim of defamation and damages flowing therefrom.

### III. QUALIFIED PRIVILEGE

Next the Appellants assert that the jury should not have awarded damages to the Dunns because Appellants' statements were protected by a qualified privilege which the Dunns failed to overcome by showing that the Appellants abused the privilege.

■■■ The doctrine of qualified privilege protects communications made in good faith on any subject matter in which the party making the communication has an interest or a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. *Van Eaton v. Fink*, 697 N.E.2d 490, 495 (Ind.Ct.App.1998), *reh'g denied*. The defendant has the burden to establish the existence of the privilege, and once the existence of the privilege is established, the burden shifts to the plaintiff to prove that the defendant abused the privilege. *Id.* Abuse exists when it is shown that: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Id.*

In the present case, the court instructed the jury that the statements made by the Appellants were protected by a qualified privilege. The court further instructed the jury:

Because the statements made by the defendant[s] were protected by a qualified privilege, the plaintiff cannot recover damages unless the plaintiff demonstrates:

1. The defendant was primarily motivated by feelings of ill will toward the plaintiff;

2. There was excessive publication of the defamatory statements; or

3. The defendant published the statements with a lack of belief or grounds for belief in the truth of what was published.

(Supp. R. 35).

■■■ In applying the same standard as discussed previously, we look to the evidence and inferences most favorable to the verdict. The evidence revealed that Mrs. Dunn shared a mutual dislike with the transportation manager of Sportscoach, whom the Dunns allege ordered them to disconnect the odometers. The evidence further supports an inference by the jury that the transportation manager's dislike for Mrs. Dunn prompted him to deny any involvement in the tampering of odometers. Moreover, the evidence supports an inference by the jury that the transportation manager was not credible because the evidence disclosed that he was released from the company due to charges of embezzlement. Further, the evidence re-

vealed that although other employees of Sportscoach were allegedly involved in the odometer tampering, only the Dunns were specifically named in the letters. This evidence is sufficient for the jury to find an abuse of the Appellants' qualified privilege. The jury's verdict will stand.

## IV. SUBMISSION OF ISSUE TO JURY

Appellants contend that the trial court erred in submitting the defamation issue to the jury. They argue that whether a statement is defamatory is a question of law for the court to decide, and, because their statements were opinions as a matter of law, the issue should not have been submitted to the jury.

▮▮▮ We disagree. Initially, the determination of whether a communication is defamatory is a question of law for the court. *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind.Ct.App.1992), *reh'g denied, trans. denied.* It is then to be presented to the jury as a question of fact only if the communication is reasonably susceptible to either defamatory or non-defamatory interpretation. *Id.*

▮▮▮ In the present case, the trial court submitted the issue of defamation to the jury by way of its final instructions as discussed in Issue I, B. Thus, we presume the trial court initially determined that the statements of the Appellants in the customer letters was defamatory and rejected the Appellants' claim that the statements were merely statements of opinion. Based upon the conflicting evidence at trial regarding the reasonable interpretation of the nature of the statements, we conclude the trial court properly submitted the issue to the jury.

## V. PUNITIVE DAMAGES

### A. Award is Contrary to Law

Appellants allege that the jury's award of punitive damages to the Dunns in the amount of $200,000 is contrary to law.

▮▮▮ In reviewing an award of punitive damages we must decide whether a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *Budget Car Sales v. Stott*, 662 N.E.2d 638, 639 (Ind.1996). In doing so, we consider only the probative evidence and the reasonable inferences flowing therefrom without weighing the evidence or assessing witness credibility. *Id.*

The jury was correctly instructed:

If you find that plaintiff is entitled to recover, then in addition to plaintiff's actual damages, you may award an additional amount as punitive damages.

Punitive damages may be awarded if you find by clear and convincing evidence that defendant acted maliciously, fraudulently, willfully or wantonly with conscious disregard for probable injury, or with gross negligence or oppressiveness that was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. Punitive damages may be awarded in such sum as you believe will serve to punish the defendant and will deter the defendant and others from like conduct in the future.

If you award punitive damages, you must state the amount of those damages on the verdict form separately from the amount of any compensatory damage you may award.

(Supp. R. 17). In addition, the jury was instructed that willful and wanton misconduct is defined as "a course of action which shows an actual or deliberate intention to cause injury or which, under existing conditions, shows either an utter indifference or conscious disregard for the rights of others." (Supp. R. 7).

▮▮▮ Here, the evidence tending to show willful and wanton misconduct on the

part of the Appellants includes Appellants' inclusion of the Dunns' names in the letters to the customers and the statement that the Appellants believe the Dunns to be fully responsible for the odometer tampering without any mention of the role of the company. This evidence tends to show the Appellants' indifference to the rights of the Dunns in this matter. Thus, we conclude that the jury properly awarded punitive damages to the Dunns.

### B. Excessive Award

Finally, Appellants claim that the jury's award of punitive damages is excessive in violation of due process under the U.S. Constitution.

As a panel of this court has noted, the U.S. Supreme Court has declined to establish a single test for determining whether an award of punitive damages violates the Constitution. *Michigan Mutual Insurance Company v. Sports, Inc.*, 698 N.E.2d 834, 842–43 (Ind.Ct.App.1998), *trans. denied*, 706 N.E.2d 555 (Ind.1999). Instead, the Court has articulated three factors to be considered in making this determination. The three factors are: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of the award to the actual harm inflicted on the plaintiff; and (3) the comparison of the award and civil penalties authorized or imposed in comparable cases. *Id.* at 843–44.

Initially, we would note that a judgment that is a product of fair procedures is cloaked with a strong presumption of validity. *Id.* Particularly, where impartial jurors were selected; the jurors heard all the evidence presented by both sides; the trial court properly instructed the jury on the law; and the trial court upheld the punitive award after considering its constitutionality, there is a presumption that the award is constitutional. *Id.* Here, impartial jurors were selected; the jurors heard all the evidence; the trial court properly instructed the jury; and the trial court considered the Appellants'

argument of unconstitutionality in its motion to correct error, which it denied. Accordingly, we begin our review of the constitutionality of this award with the presumption that it is valid.

First, we will examine the degree of reprehensibility of the Appellants' conduct. Appellants specifically provided the Dunns' names to the customers and indicated that the Dunns were fully responsible for any odometer tampering. In addition, Appellants stated that the Dunns allege they were "authorized" to disconnect the odometers rather than using the term "ordered" or "directed" to disconnect the odometers. This gives the impression that the Dunns were willing participants or even requested to disconnect the odometers, thereby placing the blame on the Dunns and distancing the Appellants from any wrongdoing. This was intentional conduct on the part of the Appellants.

The second indicium of an excessive punitive damages award is the ratio of the award to the actual harm inflicted on the plaintiff. The Appellants argue that the Dunns did not prove any actual damages thereby making the $200,000 punitive damage award infinitely disparate from any actual harm. However, the Dunns were awarded $30,000 in compensatory damages, and we will use this amount in calculating our ratio. The ratio of $30,000 to $200,000 is approximately 7 to 1. As of yet, there is no bright line rule for what is constitutionally acceptable and what is constitutionally unacceptable. We do not find this ratio to be unreasonable. *See Michigan Mutual*, 698 N.E.2d at 844 (upholding punitive damages award nearly fourteen times the compensatory damages).

The final factor to consider is the comparison of this award and the civil penalties authorized or imposed in comparable cases. Just recently a panel of this court upheld a punitive damages award of $1,000,000 in the defamation case of *Michigan Mutual*, 698 N.E.2d 834. Thus, based upon all the factors, we do not conclude

that the punitive damages are so excessive as to violate the Appellants' due process rights.

## CONCLUSION

We conclude that the jury's verdict is not contrary to law, that there was sufficient evidence to support the award of damages to the Dunns, that the Dunns made a sufficient showing of abuse to overcome the Appellants' qualified privilege, that the trial court properly submitted the issue of defamation to the jury, and that the award of punitive damages is not contrary to law. Accordingly, we affirm.

SHARPNACK, C.J., and BROOK, J., concur.