Christine DUGAN, Appellant–Plaintiff,

v.

MITTAL STEEL USA, INC., and Jay Komorowski, in his individual and official capacity, Appellees–Defendants.

No. 45A05–0902–CV–69.

Court of Appeals of Indiana.

Aug. 21, 2009.

Richard P. Busse, Valparaiso, IN, Attorney for Appellant.

Michael D. Sears, Jacquelyn S. Pillar King, Singleton, Crist, Austgen & Sears, LLP, Munster, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

Christine Dugan appeals the trial court's grant of summary judgment in favor of Mittal Steel USA, Inc. ("Mittal"), and Mittal employee Jay Komorowski (collectively, "Appellees") on her defamation claim. We affirm in part, reverse in part, and remand for further proceedings.

The facts most favorable to Dugan as the party opposing summary judgment indicate that in 2004, Mittal hired North America Security Solutions, Inc. ("NASS"), to investigate an alleged theft ring in its fabrication and reclamation department, in which Dugan worked. NASS conducted interviews with several Mittal employees, including Dugan. In February 2005, Mittal fired Dugan. Dugan filed a union grievance, and in April 2006 an arbitrator determined that Mittal did not "marshal enough evidence to prove that [Dugan] engaged in illegal conduct or otherwise defrauded [Mittal]." Appellant's App. at 16. Mittal reinstated Dugan in May 2006.

In June 2006, Dugan filed a complaint against Mittal, Komorowski, and NASS, alleging defamation per se and intentional infliction of emotional distress. NASS filed a summary judgment motion, which the trial court granted in June 2008. In July 2008, Mittal and Komorowski filed a summary judgment motion, to which Dugan filed a response. On December 4, 2008, the trial court entered an order granting the motion that reads in pertinent part as follows:

> After reviewing the facts in the light most favorable to the non-moving party, the Court hereby finds that the stipulated statements at issue do not constitute defamation *per se* as a matter of law. The Court also finds that, even if there was a genuine issue of material fact relative to whether she sufficiently stated a claim for defamation *per se*, the evidence demonstrates that all of the statements at issue are protected by qualified privilege, and there is no evidence to support an abuse of the privilege. As a matter of law, the statements at issue are not sufficiently extreme or outrageous so as to state a claim for intentional infliction of emotional distress and there is no evidence that [Dugan] has suffered emotional distress sufficient to state a claim under this theory as a result of the statements at issue.

*Id.* at 16–17. Dugan appeals only as to her defamation claim.

Our standard of review is the same as that used in the trial court:

> [S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. Review of a summary judgment motion is limited to those materials designated to the trial court.
>
> The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter

of law. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. A factual issue is material for the purposes of Trial Rule 56(C) if it bears on the ultimate resolution of a relevant issue. A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts. As a result, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the claim.

When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim.

*Bd. of Sch. Comm'rs of City of Indpls. v. Pettigrew,* 851 N.E.2d 326, 330 (Ind.Ct. App.2006) (citations and quotation marks omitted), *trans. denied.*

The party appealing from a grant of summary judgment has the burden of persuading us that the trial court's decision was erroneous. *Hamilton v. Prewett,* 860 N.E.2d 1234, 1240 (Ind.Ct.App.2007), *trans. denied.* "Special findings are not required in summary judgment proceedings and are not binding on appeal. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review." *Afolabi v. Atlantic Mortg. & Inv. Corp.,* 849 N.E.2d 1170, 1173 (Ind.Ct.App. 2006) (citation omitted). "We may affirm a grant of summary judgment upon any theory supported by the designated evidence." *Hamilton,* 860 N.E.2d at 1240.

■ Initially, we observe that "[t]he law of defamation was created to protect individuals from reputational attacks." *Id.* at 1243. "A defamatory communication is one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos,* 865 N.E.2d 593, 596 (Ind.2007) (citation, quotation marks, and brackets omitted). To prevail on a defamation claim, a plaintiff must prove four elements: "(1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Hamilton,* 860 N.E.2d at 1243. "Any statement actionable for defamation must not only be defamatory in nature, but [also] false." *Trail v. Boys & Girls Clubs of Nw. Ind.,* 845 N.E.2d 130, 136 (Ind.2006).

■ With respect to defamatory imputation, we have stated that

some communications are reasonably susceptible to either a defamatory or a nondefamatory interpretation. Words not actionable in themselves may become actionable by their allusion to some extrinsic fact, or by being used and understood in a different sense from their natural meaning. Such words are deemed actionable *per quod,* and they acquire a defamatory meaning when placed in context or are connected with extrinsic facts or circumstances. If the defamatory nature of the words appears without resort to extrinsic facts or circumstances, then the words are deemed actionable *per se.*

*McQueen v. Fayette County Sch. Corp.,* 711 N.E.2d 62, 65 (Ind.Ct.App.1999) (citations omitted), *trans. denied.* "Communications are considered defamatory per se when they impute 1) criminal conduct; 2) a

loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation; or 4) [ ] sexual misconduct to the plaintiff." *Trail*, 845 N.E.2d at 137 (citation and quotation marks omitted). "Whether a communication is defamatory is generally a question of law for the court, but the determination becomes a question of fact for the jury if the communication is reasonably susceptible to either a defamatory or a non-defamatory interpretation." *Hamilton*, 860 N.E.2d at 1243.

■ Pursuant to a stipulation counsel made at her deposition, Dugan's defamation claim is based solely on statements described in paragraphs 6 and 7 of her complaint:

6. In April 2004, [Mittal employee] Komorowski told Kevin Vana, chief of security at Mittal, that [Dugan] was stealing time by working on Sundays on a "core exchange" scheme with her boss,

Albert Verdusco, allegedly an attempt to defraud [Mittal]. [Komorowski] also accused [Dugan] of stealing an air compressor from [Mittal].

7. On or about September 9, 2004, [Komorowski] told Jim McClain and Zigmund Gorroll, employees of [Mittal], that [Dugan] was working on a "core exchange" (theft) of welding machines with her boss, Albert Verdusco.

Appellant's App. at 28.[1]

■ Dugan first contends that Komorowski's statements are defamatory per se. We agree. On their face, the statements impute criminal conduct and misconduct in Dugan's occupation.[2] Dugan also contends that the statements are false, in that the arbitrator determined that she did not engage in such wrongdoing.[3] Again, we agree.

---

1. Appellees observe that Dugan's defamation claim was also based on a statement described in paragraph 11 of her complaint, but she does not mention that statement on appeal. To the extent Dugan raises an argument in her appellant's brief based on allegations in paragraph 5 of her complaint, we agree with Appellees that she has waived this argument by failing to raise it on summary judgment. *See Hoagland v. Town of Clear Lake Bd. of Zoning App.*, 871 N.E.2d 376, 380 n. 3 (Ind.Ct.App.2007) (stating that party generally waives appellate review of argument unless it was raised before trial court). In apparent recognition of the foregoing, Dugan addresses only paragraphs 6 and 7 of her complaint in her reply brief.

2. Appellees make much ado about Dugan's deposition testimony that a "core exchange" is "a legitimate way for the company to trade defective product." Appellees' Br. at 14; *see* Appellant's App. at 39 (page 85 of Dugan's deposition) ("A core exchange is when you take a product that's broken or faulty and take it back to the company it came from, and they give you a like product that's working at a lesser price than a new one would be. It's a refurbished product. Like we have a torch exchange program that works that way."). Appellees disregard the fact that Dugan's tes-

timony is extrinsic evidence, which, as Appellees themselves point out, is "improper to consider in determining whether [Appellees are] liable for defamation *per se.*" Appellees' Br. at 14. Appellees also disregard the fact that Komorowski alleged that the core exchange "scheme" at issue was fraudulent and illegal.

3. Appellees claim that Dugan did not raise this argument on summary judgment and therefore has waived it on appeal. Appellees' Br. at 14 n. 11. This claim is untrue. *See* Appellant's App. at 34 (Dugan's designation of arbitrator's decision in response to Appellees' summary judgment motion); Appellees' App. at 167 (Dugan's argument in response to Appellees' summary judgment motion: "The result of the arbitration was that no evidence for such allegations existed. Komorowski was thus making false statements implying criminal [conduct] or misconduct by Dugan at Mittal."). We note that Appellees did not assert truth as a defense to Dugan's defamation claim. *Cf. Assoc. Corp. of N. Am. v. Smithley*, 621 N.E.2d 1116, 1119 (Ind.Ct.App. 1993) ("Truth is a complete defense to a claim of defamation.").

In response, Appellees invoke the doctrine of qualified privilege, which "protects communications made in good faith on any subject matter in which the party making the communication has an interest or a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Coachmen Indus., Inc. v. Dunn*, 719 N.E.2d 1271, 1276 (Ind.Ct.App.1999), *trans. denied* (2000). "The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind.1994). "Whether a defendant acted in good faith in making a statement usually is a question of fact for the jury." *Kelley*, 865 N.E.2d at 598 (citation and quotation marks omitted). In the absence of a factual dispute, however, the applicability of the privilege is a question of law to be determined by the court. *Id.* at 597.

> The defendant has the burden to establish the existence of the privilege, and once the existence of the privilege is established, the burden shifts to the plaintiff to prove that the defendant abused the privilege. Abuse exists when it is shown that: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth.

*Coachmen*, 719 N.E.2d at 1276 (citation omitted).

"Our courts have recognized two distinct rationales for holding certain communications qualifiedly privileged." *Kelley*, 865 N.E.2d at 597. One is the public interest privilege, which traditionally applied to "communications made to law enforcement to report criminal activity" on the basis that such statements "enhanc[e] public safety by facilitating the investigation of suspected criminal activity." *Id.* at 600. In *Kelley*, our supreme court extended the privilege to "certain statements to private citizens[.]" *Id.* The court noted that in *Pate v. Service Merchandise Co.*, 959 S.W.2d 569 (Tenn.Ct.App.1996),

> the Tennessee Court of Appeals adopted this view of the public interest privilege and held that a store clerk who reported suspicious criminal activity to a private security guard and theft victim was protected by the public interest privilege. That court reasoned:
>
> > [E]ven though the investigation was not conducted by the local police, the investigation by the security department could have led to the apprehension of the criminal. It is reasonable for anyone in the position of the clerks to believe that the identification would affect the public interest of preventing crime. The public interest privilege is grounded in public policy, and we should encourage cooperation with an investigation of a criminal matter.
>
> [*Pate*, 959 S.W.2d at 576–77.]
>
> Just as statements to law enforcement further a public interest, similar statements made to a private citizen may further the same interest. That interest is grounded in a public policy intended to encourage private citizens and victims not only to report crime, but also to assist law enforcement with investigating and apprehending individuals who engage in criminal activity.

*Id.* at 600–01.

Here, the statements Komorowski made to Mittal security chief Kevin Vana as described in paragraph 6 of Dugan's complaint relate to suspected criminal activity at Mittal. According to Vana, Ko-

morowski's statements were partly responsible for triggering the investigation of the alleged theft ring at Mittal. Appellant's App. at 60, 61 (pages 7 and 20 of Vana's deposition). Komorowski's deposition testimony indicates that he made the statements in good faith. *See* Appellees' App. at 152 (page 36 of Komorowski's deposition) ("I felt that there was some theft going on. I did not know who was involved. I did not know how high up in the company the theft was. I did not know—I was very—and just concerned of basically how the department was being run and the goings-on."). Without any evidence to the contrary, we conclude as a matter of law that these statements are protected by the public interest privilege.

In her response to Appellees' summary judgment motion, Dugan offered nothing more than unsupported assertions that Komorowski abused the privilege. *See id.* at 169 ("If the Court does find that qualified privilege exited [sic] in Dugan's case, a factual dispute is present in that a jury could look at Komorowski's statements as motivated by ill will, the statements may be excessive [sic], and the statements may be made without grounds for belief in the [sic] truth." [4]). Indiana Trial Rule 56(H) provides that no judgment rendered on a summary judgment motion "shall be reversed on the ground that there is a genuine issue of material fact *unless the material fact and the evidence relevant thereto* shall have been specifically designated to the trial court." (Emphasis added.) Dugan failed to make such specific designations here.[5] Consequently, we affirm the

trial court's grant of summary judgment as to the statements described in paragraph 6 of Dugan's complaint.

■ As for Komorowski's statement to coworkers McClain and Gorroll that Dugan "was working on a 'core exchange' (theft) of welding machines with her boss, Albert Verdusco" as described in paragraph 7 of Dugan's complaint, there is no indication that it was made for the purpose of "facilitating the investigation of suspected criminal activity." *Kelley,* 865 N.E.2d at 600. Thus, the public interest privilege is inapplicable. Consequently, we must determine whether the statement is covered by the qualified privilege of common interest, which "protects communication made in connection with membership qualifications, employment references, intracompany communications, and the extension of credit. This privilege is intended to facilitate full and unrestricted communication on matters in which the parties have a common interest or duty." *Id.* at 597–98 (citations and quotation marks omitted).

Citing *Schrader v. Eli Lilly & Co.,* 639 N.E.2d 258, Appellees contend that the common interest privilege applies to Komorowski's statement to McClain and Gorroll. The relevant facts in *Schrader* are these:

Rumors about theft arose at the Tippecanoe Laboratories of Eli Lilly and Company. In the summer of 1990, Lilly management began an internal investigation of these theft rumors and interviewed more than 30 employees. As a

---

4. On appeal, Dugan contends that Komorowski made the statements without belief or grounds for belief in their truth on the basis that he "relied on reports from other people" and "did not witness Dugan stealing from [Mittal]." Appellant's Reply Br. at 6. Dugan cites no authority for the proposition that a good faith belief must be based on firsthand knowledge.

5. Dugan, Komorowski, and Vana were deposed during discovery. In her response to Appellees' summary judgment motion, Dugan designated portions of the depositions but failed to indicate whether any of the testimony supported her assertion that Komorowski abused the public interest privilege.

result of the investigation, Lilly fired six employees, placed several others on probation, and reassigned some employees within the plant.

For some time after Lilly took these actions, rumors about the terminations lingered. A number of the 1,500 employees of the Tippecanoe Laboratories believed that the six employees were fired for stealing. A few of the rumors had specifically named one or more of the terminated employees. After the employees were fired, rumors circulated in the plant and in the surrounding community that they had been fired for stealing and that as many as 100 other employees in other areas of the plant were to be fired as well.

To quell these rumors, which were viewed as detrimental to the workers' morale, James Kleck, the Director of Lilly's Tippecanoe Laboratories, included a slide presentation in his weekly plant staff meeting for the managers of the plant on September 19, 1990.

639 N.E.2d at 260. The slide presentation indicated that the investigation had been completed and that six employees had been discharged and others disciplined as a result of a "[l]oss of confidence in these individuals" as Lilly employees. *Id.* A department head subsequently posted notes from the meeting on bulletin boards, thereby making the information accessible to approximately 1500 Lilly employees.

Five of the discharged employees sued Lilly for defamation based on the slide presentation and the posted meeting notes, and the trial court granted summary judgment for Lilly. On appeal, the employees conceded that the information at issue fell within the common interest privilege but claimed that Lilly had abused the privilege by publishing "the allegedly defamatory statements to a large number of individuals who had no reason to receive the infor-

mation." *Id.* at 263. Our supreme court disagreed:

> The posted notes were a communication from the employer to employees concerning a matter that affected both. Each had common interests in the communication: job performance and job security. The reason for the communication was to preserve those interests. When Lilly management initially addressed the warehouse situation, they acted not only to inform those individuals immediately affected by the discharges—the former employees department heads and supervisors—but also to suppress rumors and speculation running throughout the Lilly Tippecanoe County complex, as well as to communicate the core values of Eli Lilly and Company. The rumors had an adverse impact on employee productivity and morale throughout the complex. There was testimony in the trial court that the rumors were widespread and pervasive throughout the entire complex. Lilly management acted to stop the rumors by issuing the statements.

*Id.*

Here, Appellees claim that Komorowski made his statement regarding Dugan and Verdusco's alleged thievery to McClain and Gorroll "in an attempt to quell rumors and fears relating to job security, falling squarely within the holding and reasoning in *Schrader.*" Appellees' Br. at 17–18. On summary judgment, Appellees designated the following testimony from Komorowski's deposition to support their claim:

> A. .... I do remember the one time that employees were very—hourly supervisors were upset with what was going on [i.e., NASS's theft investigation at Mittal] and had very much concern. And since I was their supervisor we kind of had a quick meeting of some of their ques-

tions. *And I was to stop the rumors and calm them down.*

Q. Okay. What were the rumors?

A. No one was sure if more people were going to be terminated. That was really the biggest thing. They were—everyone was on edge. Was the investigation over? *Which I really did not know.* Were more going to be terminated? *Which I did not know.* Were they themselves going to be terminated? I mean, these were—

Q. Were any of the rumors about Albert Verduczo [sic] taking equipment from the company?

A. Yes.

Q. Were those—was this talked about in this supervisor's [sic] meeting?

A. Yes.

Appellees' App. at 151 (page 23 of Komorowski's deposition) (emphases added).

Assuming for argument's sake that Komorowski made the statement in good faith and that he and his coworkers shared a common interest in job security, we fail to see how the statement was limited to the purpose of upholding this interest, in that Komorowski admitted that he did not know whether the investigation was over or whether more employees would be terminated. In other words, we fail to see how Komorowski's statement regarding Dugan's alleged theft could even arguably serve the purpose of quelling any rumors and fears regarding McClain's and Gorroll's job security. Likewise, we cannot conclude that the meeting was the proper occasion for making the statement or that the statement was made to appropriate parties. *Cf. Schrader,* 639 N.E.2d at 262 (listing elements of qualified privilege defense). Therefore, we conclude that Appellees failed to establish as a matter of law that the statement is protected by the common interest privilege. Consequently, we reverse the trial court's grant of summary judgment as to paragraph 7 of Dugan's complaint and remand for further proceedings on that portion of her definition claim.

Affirmed in part, reversed in part, and remanded.

MAY, J., and BROWN, J., concur.