**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 3, 2009
Decided September 24, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-3084

| | |
|---|---|
| MIDWEST PSYCHOLOGICAL CENTER, INCORPORATED, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiff-Appellant*, | |
| *v.* | |
| | No. 06 CV 01643 |
| CORRECTIONS CORPORATION OF AMERICA, INCORPORATED, | William T. Lawrence, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Corrections Corporation of America, Inc. ("Corrections Corporation"), has a contract with the Marion County, Indiana Sheriff's Department to run the county's jail.  Corrections Corporation contracted with Midwest Psychological Center, Inc. ("Midwest

Psychological"), to provide psychological services for inmates at the facility. The contract between Midwest Psychological and Corrections Corporation allowed the former to use a master's-level mental-health clinician, as opposed to a licensed psychologist, to perform certain clinical services. Corrections Corporation conducted a peer-review internal audit of Midwest Psychological's services and concluded that there were several performance areas of concern. One was Midwest Psychological's failure to supervise its master's-level mental-health clinician (who was not a licensed psychologist) in providing certain services which the clinician was not licensed to perform without proper supervision. Because of this failure of supervision, Corrections Corporation terminated its contract with Midwest Psychological. It then notified Chief Gary Tingle of the Marion County Sheriff's Department of the termination and the reason for it. Chief Tingle was responsible for monitoring Corrections Corporation's performance of the contract, which included hiring and termination decisions with respect to subcontractors such as Midwest Psychological.

Midwest Psychological then sued Corrections Corporation claiming that the statements Corrections Corporation made to Chief Tingle about the termination of the contract were defamatory. Corrections Corporation responded that the statements were protected by a qualified privilege under Indiana law and that Midwest Psychological failed to show that Corrections Corporation had abused that privilege in making the statements. The district court agreed with Corrections Corporation and concluded that the privilege applied. The court further concluded that Corrections Corporation had acted in good faith and therefore did not abuse the privilege and on this basis entered summary judgment for Corrections Corporation.

The only questions on appeal are (1) whether the undisputed evidence established that Corrections Corporation's communication to Chief Tingle was privileged and (2) whether Midwest Psychological has any evidence that Corrections Corporation abused that privilege in making its statements to Chief Tingle. If there is no material issue of fact as to the application of the privilege or Corrections Corporation's good faith, then Midwest Psychological's claim necessarily fails.

We start by reviewing Indiana's qualified privilege doctrine as it pertains to the defamation claim asserted here. A qualified privilege applies to "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994). The defendant has the burden of showing that the qualified privilege protects the statement at issue in the suit. *See Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). Once a defendant has shown that the communication is protected by the privilege, the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith and thus abused that privilege. *See Schrader*, 639 N.E.2d at 262 ("Once the

communication is established as qualifiedly privileged, the plaintiff then has the burden of overcoming that privilege by showing that it has been abused.").  The plaintiff may satisfy this burden by showing that: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth."  *Id*.

"Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law."  *Id.*  There is no dispute of fact about what Corrections Corporation told Chief Tingle about the termination of Midwest Psychological's contract.  Corrections Corporation notified Chief Tingle that it terminated the contract because a master's-level clinician was performing services that he was not licensed to provide without proper supervision from a licensed psychologist.  Corrections Corporation also told Chief Tingle that it was investigating whether it had to report such conduct to the Indiana Attorney General's Office.  On these facts, the district court correctly concluded that the communication between Corrections Corporation and Chief Tingle was privileged.  Corrections Corporation, as the operator of the Marion County Jail, had a duty to inform the Sheriff's Department of its reasons for firing service providers.  Chief Tingle, as the person responsible for monitoring the contract between Corrections Corporation and the Sheriff's Department, had a corresponding interest in receiving that information.  Therefore, the remaining question is whether Corrections Corporation abused the privilege.

Midwest Psychological argues that Corrections Corporation acted either with ill will or without grounds to believe the truth of its assertions to Chief Tingle.  Both arguments are based on Midwest Psychological's claim that Corrections Corporation lacked any basis for suggesting that Midwest Psychological had violated its contract by using a master's-level clinician because the contract between the two specifically allowed it to use a master's-level clinician.  This misunderstands the crux of the communication between Corrections Corporation and Chief Tingle.  Corrections Corporation's statements communicated a concern about the *way* in which Midwest Psychological was using a master's-level clinician, *not* the mere fact that a master's-level clinician was used at all.  There is no conflict between the terms of the contract and the explanation Corrections Corporation gave Chief Tingle for the termination of Midwest Psychological's contract.

Midwest Psychological also argues that the findings of Corrections Corporation's internal audit were flawed.  It provides no evidence to support that assertion, however, and conclusory statements of this kind are not sufficient to create a material issue of fact for trial.  In any event, Midwest Psychological offers no evidence to suggest that Corrections Corporation lacked grounds for believing the truth of its internal audit's conclusions *even if* they are wrong.  Midwest Psychological appears to be arguing that reliance on the internal audit was insufficient as a matter of law; we decline to hold that an internal audit is per se an insufficient basis to support a privileged communication.

Accordingly, the district court properly entered summary judgment for Corrections Corporation.

AFFIRMED