**BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS, Appellant/Cross–Appellee–Defendant,**

**and**

**Ken Grubb and Susan Torzewski, Cross–Appellees–Defendants,**

**v.**

**Angela PETTIGREW, Appellee/Cross–Appellant–Plaintiff.**

**No. 49A02–0509–CV–849.**

Court of Appeals of Indiana.

July 25, 2006.

Transfer Denied Nov. 8, 2006.

Caren L. Pollack, Jenna C. Lower, Mandel Pollack & Horn, P.C., Carmel, IN, Attorneys for Appellant/Cross–Appellees.

Morris L. Klapper, Laurel R.K. Gilchrist, G.R. Parish, Jr., Klapper Issac & Parish, Indianapolis, IN, Attorneys for Appellee/Cross–Appellant.

## OPINION

KIRSCH, Chief Judge.

Angela Pettigrew filed suit against Ken Grubb, Susan Torzewski, and the Board of School Commissioners of the City of Indianapolis (the "Board") alleging that Grubb and Torzewski, both employees of Indianapolis Public Schools ("IPS"), made defamatory statements against her, and that the Board negligently supervised these employees, which resulted in their alleged negligent and unreasonable conduct. The trial court granted summary judgment in favor of Grubb and Torzewski, but denied it as to the Board. The Board now appeals the trial court's denial of its motion for summary judgment, and Pettigrew cross-appeals the trial court's granting of Grubb's and Torzewski's motion for summary judgment. Because we hold that the Board, Grubb and Torzewski are immune under the doctrine of qualified immunity, we need not reach whether the statements of Grubb and Torzewski were defamatory.

We affirm in part, reverse in part, and remand with instructions.[1]

## FACTS AND PROCEDURAL HISTORY

On September 12, 2003, Torzewski reported to Grubb, a human resources supervisor, that two weeks prior, she witnessed Pettigrew exit the IPS building where she worked, approach a blue car, participate in some kind of exchange of money, and then return quickly to the building. It was IPS policy for employees with a reasonable suspicion of a violation of IPS drug policies to report their suspicion to the appropriate authorities (either an administrator, supervisor, or an IPS police officer). Torzewski testified that she did not accuse Pettigrew of dealing drugs, but that she merely reported that she had witnessed a suspicious exchange. Based on this report, Grubb called the Chief of the IPS Police Department, Stephen Garner, and initiated an investigation into Pettigrew. During that investigation, a drug-sniffing canine was brought into Pettigrew's office and twice indicated the presence of contraband in a black laptop computer case under Pettigrew's desk.

After the canine sweep, Grubb discussed the investigation with Pettigrew. She confirmed that she had met someone behind the building that day and had received money from him. However, she told Grubb that she was just borrowing money from a friend. Pettigrew also said that she had obtained the computer case from the technology lab and that she had kept the bag under her desk for two weeks. Then she told Grubb that if he suspected her of drug use, he should test her. Immediately afterwards, she provided a urine sample for analysis.

---

**1.** We held oral argument on this case on June 6, 2006. We commend counsel on the quality of their oral and written advocacy.

Pursuant to IPS policy, which provides for the suspension of employees while awaiting the results from a drug test, Grubb suspended Pettigrew from her job. She was permitted to return to her job after the test results came back negative.

On October 21, 2003, Pettigrew filed a complaint for defamation against Grubb, seeking damages for the statements he made to other IPS employees regarding Torzewski's report of the suspicious transaction. She later amended her complaint to add the Board and Torzewski as defendants, and to add a claim of negligent supervision against the Board. Grubb, Torzewski, and the Board filed a motion for summary judgment, which was granted as to Grubb and Torzewski, and denied as to the Board on May 4, 2005. The trial court certified its summary judgment order for interlocutory appeal, and we accepted jurisdiction on August 29, 2005. The Board now appeals the denial of its motion for summary judgment, and Pettigrew cross-appeals the granting of summary judgment in favor of Grubb and Torzewski.

## DISCUSSION AND DECISION

■ Our standard of review for summary judgment is the same as is used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind.2003). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Bushong*, 790 N.E.2d at 473. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

■ ' "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." ' *Id.* at 474 (quoting *Kottlowski v. Bridgestone/Firestone*, 670 N.E.2d 78, 82 (Ind.Ct. App.1996), *trans. denied*). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Id.* A factual issue is material for the purposes of Trial Rule 56(C) if it bears on the ultimate resolution of a relevant issue. *Id.* A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Id.* As a result, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the claim. *Id.*

■ When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Northern Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct.App.1999).

### I. Defamation

The Board maintains that even if the statements of Grubb and Torzewski were determined to be defamatory, it is immune to Pettigrew's claim of defamation under the doctrine of qualified privilege.

■■ A qualified privilege of public interest applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either

legal, moral, or social, if made to a person having a corresponding interest or duty. *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind.1992); *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 262 (Ind.1994). The privilege exists because of "the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty." *Cortez v. Jo–Ann Stores, Inc.,* 827 N.E.2d 1223, 1232 (Ind.Ct. App.2005) (quoting *Gatto v. St. Richard Sch., Inc.,* 774 N.E.2d 914, 925 (Ind.Ct. App.2002)). The elements of the defense are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in its scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner to the appropriate parties only. *Id.*

■■■■■ Intracompany communications regarding the fitness of an employee are protected by the qualified privilege, in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs. *Bals,* 600 N.E.2d at 1356; *Schrader,* 639 N.E.2d at 262. The privilege protects personnel evaluation information communicated in good faith. *Schrader,* 639 N.E.2d at 262. Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law. *Bals,* 600 N.E.2d at 1356; *Schrader,* 639 N.E.2d at 262.

■■■ Here, Torzewski spoke with Grubb regarding a suspicious exchange, which may have involved Pettigrew dealing drugs. Both were employed by IPS at the time of the communications, and Grubb was a supervisor in human resources. Information regarding Torzewski's report was then shared with the following people: Stephen Garner, the Chief of the IPS Police Department; Carole Craig, Grubb's supervisor in human resources; Duncan Pritchett, the IPS Superintendent; Mary Jo Dare, Pettigrew's supervisor; and sev-

eral other members of the IPS Police Department. Because all of these individuals were either administrators involved in supervising Pettigrew, or school officers involved in her investigation, they all had a common interest or duty relating to the subject matter, i.e., Pettigrew's possible involvement in illegal activity on school grounds, and, therefore, the communications regarding Pettigrew are protected by the qualified privilege.

■■■■ However, such a privilege may be overcome. A statement otherwise protected by the doctrine of qualified privilege may lose its privileged character upon a showing of abuse when: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statement; or (3) the statement was made without belief or grounds for belief in its truth. *Schrader,* 639 N.E.2d at 262. Once the communication is established as qualifiedly privileged, the plaintiff then has the burden of overcoming that privilege by showing that it has been abused. *Id.*

Pettigrew contends that neither Grubb nor Torzewski believed or had grounds to believe that Pettigrew was involved in dealing drugs, which, she argues, is the substance of their remarks. She points to their testimony as evidence that neither believed she was involved in dealing drugs. Specifically, Torzewski testified in her deposition that she had not entertained the thought that the exchange she witnessed was a drug exchange. *Appellant's App.* at 120. Pettigrew also points to testimony from Grubb, which indicated that he had no suspicion that Pettigrew had done anything warranting suspension before he suspended her. *Id.* at 127. Because of these statements, Pettigrew argues, Torzewski and Grubb should not be afforded protection because they accused her of dealing

drugs without belief in the truth of those statements.

■ However, what Torzewski reported and Grubb investigated was Pettigrew's participation in a suspicious transaction on school grounds. Because it is undisputed that such a transaction occurred, we cannot see how Torzewski could have reported witnessing the transaction without also believing in the truth of her report. Likewise, Grubb would not have followed up on Torzewski's report if he had not believed that she had witnessed a suspect transaction. Pettigrew admitted in her testimony that she approached a vehicle on school property and received money from the driver of that vehicle. Pettigrew has designated no evidence indicating that either Torzewski or Grubb did not believe, or have grounds to believe, that Torzewski reported what she saw. The fact that neither Torzewski nor Grubb reached the conclusion that Pettigrew was dealing drugs without further investigation is reasonable, and it does not demonstrate that they did not believe the report Torzewski made. Because the statements of Torzewski and Grubb are protected by a qualified privilege, and Pettigrew has produced no evidence that either Torzewski or Grubb abused their qualified privilege, summary judgment was properly entered by the trial court in favor of Grubb and Torzewski. It follows, then, that summary judgment should be entered in favor of the Board. *Grzan v. Charter Hosp. of Northwest Ind.*, 702 N.E.2d 786, 792 (Ind.Ct.App.1998) (once servant released of liability, no negligence can be imputed to the principal for purposes of creating respondeat superior liability).

## II. Negligent Supervision

■ The Board next argues that the trial court erred in denying its motion for summary judgment regarding Pettigrew's claim that it was negligent in the supervision of Grubb and Torzewski. We agree and find there can be no claim of negligent supervision under these circumstances.

We have previously held that a separate cause of action for negligent hiring accrues when an employee "steps beyond the recognized scope of his employment to commit a tortious injury upon a third party," *Tindall v. Enderle*, 162 Ind.App. 524, 320 N.E.2d 764, 768 (Ind.Ct.App.1974), but that such a claim has "no value where an employer has stipulated that his employee was within the scope of his employment." *Id.* at 769. The reasoning for this is because under the doctrine of respondeat superior, an employer is already responsible for the actions of its employees that were committed within the scope of their employment. *Konkle v. Henson*, 672 N.E.2d 450, 456 (Ind.Ct.App.1996). *See also Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind.Ct.App.1994) (claims of negligent hiring and retention duplicative in light of doctrine of respondeat superior, which provides vehicle for recovering damages resulting from acts of negligence committed by employee acting within scope of employment).

The same reasoning applies to Pettigrew's negligent supervision claim. Here, Pettigrew argues that Superintendent Pritchett negligently supervised Grubb by failing to provide instruction to Grubb or others regarding the situation, request Pettigrew's version of events, intervene in her suspension while awaiting the results of the drug test, or request chemical analysis of the computer bag on which the police dog had indicated. All of these actions, if taken, would have been within the scope of Superintendent Pritchett's employment, as the actions would have furthered IPS's interest in maintaining a safe environment for its students, and none of the actions would have been considered unauthorized acts for a Superintendent to take in this situation. *See*

*Hurlow v. Managing Partners, Inc.,* 755 N.E.2d 1158, 1163 (Ind.Ct.App.2001) (respondeat superior liability turns on whether an employee's act furthered the employer's business interest to an appreciable extent or whether an employee's authorized acts and unauthorized acts are so closely associated that the employee can be said to have acted within the scope of his employment). Additionally, IPS has always maintained that all of the parties involved in this action were acting within the scope of their employment. *Appellant's Br.* at 11. Because of this, we cannot see that a separate cause of action for negligent supervision arises in this situation. Under the facts presented to us in this case, it is clear that, like our previous holdings regarding a claim for negligent hiring, Pettigrew's claim for negligent supervision is duplicative as respondeat superior already provides a vehicle for recovering damages from an employer for negligence committed by an employee within the scope of his employment.[2]

### III. Conclusion

We affirm the trial court's ruling granting summary judgment in favor of Grubb and Torzewski. We reverse the trial court's denial of summary judgment to the Board in regards to Pettigrew's defamation and negligent supervision claims and remand with instructions to enter summary judgment in favor of the Board.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and CRONE, J., concur.

---

**2.** Although Pettigrew's First Amended Complaint alleges negligent retention as an additional claim, *Appellant's App.* at 21, she states that she is not pursuing such a claim on appeal. If she had, it would have failed for the same reasoning as her negligent supervision claim.