Scott D. WELLS, Appellant–
Plaintiff/Cross–Appellee,

v.

Herman Bud BERNITT, individually, Amy Bernitt, individually, Appellees–
Defendants/Cross–Appellants,

and

J.D. Maxwell, as an employee of the Indiana State Police, Travis Coryea, individually, and as an employee of the Indiana State Police, Stacy Brown, individually, and as an employee of the Indiana State Police, Indiana State Police, Other Unknown Employees of the Indiana State Police, and State of Indiana, Appellees–
Defendants.

No. 53A01–0910–CV–494.

Court of Appeals of Indiana.

Nov. 10, 2010.

See also, 848 N.E.2d 1133.

Jeffrey S. McQuary, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for State Employee Appellees.

Herman Bud Bernitt, Amy Bernitt, Bloomington, IN, Appellees Pro Se.

## OPINION

KIRSCH, Judge.

Scott D. Wells ("Wells") appeals from the trial court's orders granting summary judgment in favor of Herman Bud ("Bud") and Amy ("Amy") Bernitt (collectively "the Bernitts") as to Wells' claim against them for defamation and in favor of J.D. Maxwell ("Maxwell"), Travis Coryea ("Coryea"), Stacy Brown ("Brown"), the Indiana State Police, other unknown employees of the Indiana State Police, and the State of Indiana as to Wells' claims against them for negligent and intentional torts. The Bernitts cross-appeal from the trial court's order granting summary judgment in favor of Wells on their counterclaim alleging abuse of process and malicious prosecution.

Wells presents the following restated issue for our review:

I. Whether the trial court erred by granting summary judgment in favor of the Bernitts, Brown and Coryea.

The Bernitts cross-appeal raising the following restated issue for our review:

II. Whether the trial court erred by granting summary judgment in favor of Wells on the Bernitts's counterclaim alleging abuse of process.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Wells and the Bernitts are political adversaries in Monroe County, and their relationship is acrimonious. On September 27, 2002, the Bernitts parked their pickup truck in a parking lot in downtown Bloomington across the street from a tavern that Wells was known to frequent on Friday nights. The Bernitts believed that they observed Wells exit the tavern, stagger across the street, urinate on the railroad tracks or street, and get into his car and drive away. The Bernitts then followed Wells. At some point, Bud contacted Maxwell,[1] an Indiana State Trooper and fellow political adversary of Wells, at his home and reported his observations of Wells' conduct. Maxwell called the Indiana State Police post and asked the dispatcher to send an officer to meet the Bernitts and take their complaint. Troopers Brown and Coryea responded to the dispatch. After taking the Bernitts' complaint, Coryea left on an unrelated call, and Brown drove to a residential area where he intercepted Wells. Wells was ultimately charged, tried, and convicted of disorderly conduct and operating while intoxicated. We affirmed his convictions on direct appeal. *Wells v. State*, 848 N.E.2d 1133 (Ind. Ct.App.2006).

On September 27, 2004, Wells filed his complaint alleging defamation against the Bernitts and negligent and intentional torts, and he claimed a violation of his constitutional rights against Maxwell, Coryea, Brown, the Indiana State Police, other unknown employees of the Indiana State Police, and the State of Indiana. The Bernitts filed a counterclaim alleging abuse of process and malicious prosecution against Wells. The Bernitts and the State of Indiana defendants filed motions for summary judgment as to Wells' complaint, and the trial court granted the motions for summary judgment. Wells then filed a motion for summary judgment on the Bernitts' counterclaim. The trial court granted Wells' motion and dismissed the Bernitts' counterclaim. Wells now appeals, and the Bernitts cross-appeal. Additional facts will be supplied.

## DISCUSSION AND DECISION

Both sides present claims of trial court error from orders granting summary judgment. Our standard of review for summary judgment is the same as is used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 330 (Ind.Ct.App.2006). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Pettigrew*, 851 N.E.2d at 330. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* Questions of law are reviewed under a *de novo* standard. *Lib-*

---

1. Maxwell passed away after the case at bar commenced, but prior to the trial court's or-

der granting summary judgment.

*erty Mut. Fire Ins. Co. v. Beatty,* 870 N.E.2d 546, 549 (Ind.Ct.App.2007).

## I. Summary Judgment as to Wells' Complaint

### A. *The Bernitts' Motion*

Wells argues that the trial court erred by granting the Bernitts' motion for summary judgment on his defamation complaint because the Bernitts' statements about his conduct on the night of his arrest for operating while intoxicated went beyond the statements necessary to establish the offense.

Defamation is that which tends to "injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *McQueen v. Fayette County Sch. Corp.,* 711 N.E.2d 62, 65 (Ind.Ct.App.1999), *trans. denied.* To recover in an action for defamation, "that which caused the alleged defamation must be both false and defamatory." *Id.* Moreover, a plaintiff must establish the basic elements of defamation: (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* The determination of whether a communication is defamatory is a question of law for the court. *Id.* Wells claims that the fact of his conviction for operating while intoxicated did not establish the truth of the Bernitts' statements that they observed Wells stagger when exiting the tavern, urinate on the railroad tracks or the street, and drive so erratically that he almost ran over pedestrians.

The trial court [2] made the following findings that are relevant to our review of this issue:

### Findings of Fact

1. Wells was a Monroe County Council person, an elected public official, during all times relating to his Complaint.

\* \* \*

3. On the night of September 27, 2002, the Bernitts both witnessed Wells leave the Crazy Horse Restaurant in Bloomington, Monroe County, Indiana. They watched him walk across the street to his vehicle and drive away. Based on their observations, the Bernitts believed Wells to be displaying obvious signs of intoxication.

5. The Bernitts then contacted a state police officer, J.D. Maxwell ("Maxwell"), by telephone, and described their observations of Wells.

\* \* \*

8. During the evening of September 27, 2002, Wells had consumed at least one alcoholic beverage at the Crazy Horse Restaurant, as well as more alcoholic beverages at Nick's English Hut and Kilroy's, two other Bloomington, Indiana businesses in which alcoholic beverages are served.

9. Trooper Brown then observed Wells' driving and subsequently arrested him for operating while intoxicated ("OWI") and other criminal conduct.

\* \* \*

11. Wells was subsequently convicted of OWI and disorderly conduct by a Monroe County jury. Although he appealed to the Indiana Court of Appeals, his conviction was not overturned. See *Wells v. State,* 848 N.E.2d 1133 (Ind.Ct.App.2006). In upholding Wells' conviction, the

---

**2.** We commend the trial court on the thoroughness and clarity of its findings and con-

clusions which have facilitated our appellate review.

Court noted that Wells "actually did commit the crime of operating a vehicle while intoxicated." *Wells,* 848 N.E.2d at 1150.

12. Wells has not presented evidence that the Bernitts made any defamatory statements to any person other than reporting to law enforcement officials on September 27, 2002, or any time thereafter.

\* \* \*

14. Wells has not presented evidence that the Bernitts reported their suspicions of Wells' behavior to the police with knowledge that the reports were false or with serious doubts as to their truth. In fact, their reports resulted in arrest and conviction of Wells for OWI.

15. Wells has previously filed a separate defamation suit against the Bernitts and others, in the Monroe Circuit Court, entitled *Wells v. Bernitt et al.,* Cause No. 53C01–0207–CT–1283, that alleged the Bernitts published defamatory statements about Wells regarding his alleged knowledge of a highly publicized alleged arson.

16. In Cause No. 53C01–0207–CT–1283, the Court determined, on the merits, that statements published by the Bernitts on the Herald Times newspaper online message board concerning allegedly illegal septic repairs performed by Wells, were not defamatory as a matter of law and could not be used to establish actual malice by the Bernitts with respect to the allegedly defamatory statements they made about Wells and his knowledge of the alleged arson.

17. Wells has designated the same Herald Times postings by the Bernitts to establish alleged actual malice on the part of the Bernitts with respect to the allegedly defamatory statements that form the basis of this present action.

### Conclusions of Law

\* \* \*

3. "Actual malice" exists when the defendant publishes a defamatory falsehood "with knowledge that it was false or with reckless disregard of whether it was false or not." [*New York Times,* 376 at 279–80, 84 S.Ct. 710]. Recklessness in this context is not based upon what a reasonably prudent man would have published or would have investigated before publishing. The standard must actually show that the defendant had serious doubts as to the truth of the statement. *St. Amant v. Thompson,* 390 U.S. 727, 731 [88 S.Ct. 1323, 20 L.Ed.2d 262] (1968).

4. A public official must offer evidence that the defendant published a defamatory statement with actual malice. *Shine v. Loomis,* 836 N.E.2d 952, 958 (Ind.Ct.App.2005). If he fails to do so, the defendant is entitled to summary judgment. *Id.* Because Wells was an elected county council member at all times relevant to his Complaint, he is considered to be a public figure. *St. Amant,* 390 U.S. at 728 [88 S.Ct. 1323].

5. A qualified privilege, the common interest privilege, serves to protect statements made in good faith on any subject matter in which the party making the statements has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. *Holcomb v. Wal-*

*ter's Dimmick Petroleum, Inc.,* 858 N.E.2d 103, 106 (Ind.2006). The Bernitts' statements are matters of public interest that are protected by the common interest privilege.

6. Indiana courts, as well as other courts throughout the nation, have recognized the effect drunk driving has had on the general public and the state's interest in preventing accidents caused by intoxicated drivers. *Smith v. Cincinnati Ins. Co.,* 790 N.E.2d 460, 461–2 (Ind.2003). Whether the Bernitts' actions were those beyond what might be considered the actions of a reasonable person, is certainly entertainable. Such actions, however egregious the motives, are not actionable.

7. True statements never give rise to liability for defamation. *Conwell v. Beatty,* 667 N.E.2d 768, 774 (Ind.Ct. App.1996). The statements also need not be absolutely true, but just substantially true. *Journal–Gazette Co. v. Bandido's Inc.,* 712 N.E.2d 446, 457 (Ind.1999). Here, the Bernitts' statements to the police need not be absolutely true to be protected, and their substantial truth is supported by Wells' admission of consuming alcohol at the Crazy Horse Restaurant, as well as his conviction for OWI.

8. In order to create a genuine issue of fact, a party must produce admissible evidence and an inference is not reasonable if it rests on more than a speculation or conjecture. *Estate of Sullivan v. Allstate Ins. Co.,* 841 N.E.2d 1220, 1225 (Ind.Ct.App. 2006). Wells has failed to produce such evidence.

9. Because the Court in Cause No. 53C01–0207–CT–1283 concerning the Bernitts' Herald Times message board postings about Well's [sic] allegedly illegal septic work [found that the postings] did not constitute actual malice, Wells is stopped from asserting such message board postings by the Bernitts establish actual malice in the present case.

*Appellant's App. Vol.* 1 at 12–14.

 A defendant in a defamation case is entitled to summary judgment if he demonstrates that the undisputed material facts negate at least one element of the plaintiffs claim. *Kitco v. Corp. for Gen. Trade,* 706 N.E.2d 581, 587 (Ind.Ct.App. 1999). In *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that a public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice." Both a public figure and a private individual bringing a defamation action over a matter of public or general concern must prove by clear and convincing evidence that the defendant made the alleged defamatory statement with "actual malice." *Journal–Gazette Co. v. Bandido's, Inc.,* 712 N.E.2d 446, 452 (Ind.1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999). The actual malice element required by the United States Supreme Court and our state courts is not to be confused with the ordinary definition of "malice" as "an evil intent or motive" arising from spite or ill will. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

 Here, Wells, an elected public official, attempted to establish the "actual malice" element of his claim by designating the same Herald Times message board postings that Wells offered to establish actual malice on the part of the Bernitts in a different defamation claim against them.

However, the trial court in that defamation action determined that those same message board postings were not defamatory as a matter of law and could not be used to establish actual malice on the part of the Bernitts.[3]

 The Bernitts argued that Wells was precluded from using those postings in this matter, and the trial court agreed.

In general, issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit. Issue preclusion applies only to matters actually litigated and decided, not all matters that could have been decided. The matters decided must have been appealable in the original suit.

*Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind.2009) (internal citations omitted). Based upon the record that was before the trial court, which is the record before this court on review, we conclude that the doctrine of issue preclusion prevents Wells from using the same message board postings to establish actual malice on the part of the Bernitts in this matter. Further, because

there was no admissible evidence before the court to establish actual malice, one of the elements of defamation, the trial court correctly concluded that the Bernitts were entitled to the entry of summary judgment in their favor as to Wells' complaint against them.[4] The trial court correctly determined that summary judgment should be granted in favor of the Bernitts.

### B. The State Defendants' Motion

Wells also argues that the trial court erred by granting summary judgment in favor of Troopers Brown and Coryea on his claim under 42 U.S.C. § 1983 ("§ 1983"), alleging that the officers had used excessive force during Wells' arrest. Wells does not challenge the trial court's entry of summary judgment in favor of the State of Indiana, other unknown employees of the Indiana State Police, Maxwell, and Brown and Coryea, as to the state-law claims he had brought against them.

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

---

3. During the hearing on the Bernitts' motion for summary judgment, counsel for the Bernitts made reference to the trial court's ruling in another separate defamation action (53C01–0207–CT–1283) brought by Wells against the Bernitts. *See e.g. Appellant's App. Vol.* 1 at 7–8. The decision or final order in the other case was not designated by either Wells or the Bernitts in the current matter. The trial court indicated that it could take judicial notice of that court's file, but requested that counsel for the Bernitts identify the portions of the file relevant to their argument that certain message board postings found not to be defamatory as a matter of law in 53C01–0207–CT–1283 could not be used to establish actual malice on the part of the Bernitts in this action either. *Id.* at 29, 59–60. Wells' counsel joined in the request that the trial court take judicial notice of the court's file in 53C01–0207–CT–1283. *Id.* at 60.

4. The trial court also determined that Wells' defamation claim fails because the Bernitts established that their statements were substantially true and were protected by a qualified privilege that protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). Because we hold that summary judgment was properly granted on the malice issue, we do not reach Wells' arguments regarding the alternative bases for trial court's ruling.

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 provides a civil remedy against a person who, under color of state law, subjects a United States citizen to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. *City of Warsaw v. Orban,* 884 N.E.2d 262, 267 (Ind.Ct.App. 2007). In order to recover under § 1983, Wells had to show that he (1) held a constitutionally protected right, (2) was deprived of this right, (3) Brown and Coryea acted with reckless indifference to cause this deprivation, and (4) Brown and Coryea acted under color of state law. *See id.*

 The trial court correctly noted that Wells' complaint alleged a violation of the Eighth Amendment to the U.S. Constitution and did not state a cognizable claim as the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's due process clause are applicable only to convicted prisoners and pretrial detainees. *Appellant's App. Vol.* 1 at 17; *Williams v. Rodriguez,* 509 F.3d 392, 401 (7th Cir.2007). The trial court correctly decided to analyze Wells' excessive force claim as if it alleged a violation of the Fourth Amendment's prohibition against unreasonable seizure. *See Graham v. Connor,* 490 U.S. 386, 388, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(claims that law enforcement officials used excessive force in course of making arrest or other seizure of person are analyzed under Fourth Amendment's objective reasonableness standard). The trial court, here, found that the officers' use of force in this situation was objectively reasonable.

The United States Supreme Court outlined the process for determining whether the force used by law enforcement officers in any particular seizure is reasonable for purposes of Fourth Amendment analysis. The Court stated the following:

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based upon probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers," violates the Fourth Amendment As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

490 U.S. at 396–97, 109 S.Ct. 1865 (internal citations omitted).

■■■■ Before reviewing the trial court's analysis of the reasonableness of the officers' use of force, we pause to note that Wells reiterated to the trial court his version of the events leading to his arrest, the same version rejected by a jury during his criminal trial. He argues that because of this court's posture on review of an order granting summary judgment that we must accept the facts most favorable to him, the non-moving party. Collateral estoppel, however, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind.Ct.App. 2005). Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id.* Wells presented his version of the facts at his criminal trial, and now, as to his § 1983 claim of excessive force. We find that the trial court correctly disallowed Wells' attempt to relitigate the facts and issues that were previously determined at his criminal jury trial.

■■■■ Here, the facts established at Wells' criminal trial, subsequently affirmed on appeal, are that Brown responded to a dispatch regarding a report by the Bernitts that Wells was observed leaving a bar, driving erratically, exiting his car, and urinating in the street. *Wells*, 848 N.E.2d at 1139. After receiving a description of Wells' vehicle and license plate number from the Bernitts, Brown left and located Wells' vehicle, which was parked illegally. *Id.* Wells got into his vehicle before Brown could call for a tow truck. *Id.* Initially, Wells was not wearing his seatbelt, but put it on after driving past Brown's cruiser. *Id.* Brown pulled his cruiser behind Wells' vehicle, saw Wells make a sharp turn at a corner, head to the curb, then overcorrect so that his car was straddling the center line of the street. *Id.* Brown then initiated the traffic stop of Wells' vehicle. *Id.* The following description of the events that transpired comes from the opinion of this court on Wells' direct appeal.

> When Trooper Brown approached Wells's vehicle, the window was rolled up and Wells had evident difficulty rolling the window down but finally was able to do so. Trooper Brown asked Wells for his license and registration, and Wells responded by asking repeatedly why he had been stopped, sometimes using profane language. Pursuant to Trooper Brown's training and usual practice, he asks for a license and registration before advising a driver why he or she has been pulled over. Finally, Wells attempted to give his license to Trooper Brown but had difficulty finding and removing it from a stack of cards held together by a rubber band, even though the license was on top of the stack. Trooper Brown then told Wells that he had been pulled over for not wearing a seatbelt. Wells again responded by being argumentative and us-

ing profane language. When Trooper Brown also told Wells of his erratic driving and the report that he had urinated in the street, Wells called Trooper Brown a "f* * *ing liar." Because Wells was being belligerent and highly emotional, and as part of normal protocol for investigating a possible OWI, Trooper Brown called Trooper Travis Coryea for assistance. Before Trooper Coryea arrived on the scene, a nearby resident, Joel Chanvisanuruk, called 911 because Wells was "freaking out." Specifically, Wells was shouting and screaming extensively and appeared to be angry to the extent that Chanvisanuruk was concerned for Trooper Brown's safety and thought he needed backup to help deal with Wells. When Trooper Coryea arrived, he and Trooper Brown repeatedly asked Wells to get out of his car before Wells finally did so. Wells had difficulty exiting the car; he started to fall backwards in the car when he turned in his seat to exit and had to pull himself up on the steering wheel before getting out, and after getting out he again started to fall backwards before reaching back and steadying himself on the car and closing the door. Wells refused to perform any field sobriety tests and again yelled that he was being embarrassed "because of that mother f* * *er J.D. Maxwell...." When Trooper Brown attempted to inform Wells of the implied consent law, Wells repeatedly interrupted him by yelling obscenities and asserting that he had been set up. Throughout Trooper Brown's interaction with Wells, he repeatedly asked Wells to quiet down, but Wells did not do so.

When Wells refused to take a breath test after being read the implied consent law, Trooper Brown decided to place Wells under arrest. After learning this, Wells refused to cooperate with Trooper

Brown and Coryea's attempts to handcuff him and place him in a police car. Again, Wells repeatedly yelled obscenities at the troopers in connection with his claim that he had been set up.

*Id.* at 1139–40.

Coryea delivered a knee strike to the side of Wells' leg causing Wells' legs to buckle. The officers were then able to bring Wells to the ground. Wells continued to struggle and attempt to stand up. Brown used his left shin on the small of Wells' back to prevent him from standing. As the result of those struggles, Wells and the officers sustained injuries.

We conclude that the trial court correctly determined that Brown and Coryea were entitled to summary judgment as to Wells' § 1983 claim. Viewed from the perspective of a reasonable officer on the scene and considering the totality of the facts and circumstances known to the officers at the time of their actions, we agree that the designated evidence establishes that the officers did not use excessive force and that entry of summary judgment in their favor was correct.

## II. Summary Judgment as to the Bernitts' Counterclaim

The Bernitts argue on cross-appeal that the trial court erred by entering summary judgment in Wells' favor on their counterclaim against him alleging abuse of process and malicious prosecution.

 In order to succeed on a claim of malicious prosecution, the Bernitts were required to establish that Wells instituted or caused to be instituted an original action against the Bernitts, that Wells did so acting maliciously, without probable cause to institute the original action, and the original action was terminated in the Bernitts' favor. *See Gov't Payment Serv., Inc. v. Ace Bail Bonds,* 854 N.E.2d 1205, 1210–11 (Ind.Ct.App.2006). "Abuse of process

has two elements: (1) 'ulterior purpose or motives;' and (2) 'a willful act in the use of process not proper in the regular conduct of the proceeding.'" *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind.Ct. App.2005) (quoting *Town of Orland v. Nat'l Fire & Cas. Co.*, 726 N.E.2d 364, 371 (Ind.Ct.App.2000)). "If a party's 'acts are procedurally and substantively proper under the circumstances' then his intent is irrelevant." *Id.* (quoting *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind.Ct. App.1996)). "A party may not be held liable for abuse of process if the 'legal process has been used to accomplish an outcome which the process was designed to accomplish.'" *Id.*

In support of their claim that summary judgment should not have been entered in Wells' favor on their claim of malicious prosecution, the Bernitts contend that Wells had no probable cause to bring his claims against them for defamation and false reporting because his criminal conviction establishes that their statements about his conduct were true. They claim that genuine issues of material fact exist as to Wells' probable cause to bring the complaint and assert that a jury should have been allowed to make that determination.

The following has been stated about the determination of the existence of probable cause:

> In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted; in such case, the court must hypothetically state to the jury the material facts which the evidence tends to prove, and positively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause.

*Wong v. Tabor*, 422 N.E.2d 1279, 1285 (Ind.Ct.App.1981) (quoting *Indianapolis Traction & Terminal Co. v. Henby*, 178 Ind. 239, 248, 97 N.E. 313, 317 (Ind.1912)).

■ Here, Wells alleged in his complaint that the Bernitts not only communicated the facts that ultimately supported Wells' conviction for operating while intoxicated, but also stated that Wells had staggered out of the tavern, urinated in public, and nearly struck some pedestrians while driving away from the tavern, statements that were injurious to his reputation separate from his criminal conviction for operating while intoxicated. The Bernitts did not deny making those statements, but instead argued that the statements were true. Wells also designated affidavits from others who supported Wells' contention that he did not stagger out of the tavern.

In the context of criminal cases, we have stated that the amount of evidence necessary to meet the probable cause requirement is decided case by case, and is less than the level of proof necessary to establish guilt beyond a reasonable doubt. *See Copas v. State*, 891 N.E.2d 663, 668 (Ind. Ct.App.2008). Although Wells did not designate evidence sufficient to withstand a motion for summary judgment, we agree with the trial court that he designated evidence sufficient to establish that he had probable cause to bring his claims against the Bernitts. The existence of probable cause entitled Wells to summary judgment in his favor on the Bernitts' counterclaim for malicious prosecution.

■ Likewise, we conclude that the trial court correctly entered summary judgment in Wells' favor on the Bernitts' counterclaim for abuse of process. Wells acknowledged that the Bernitts were his political adversaries. However, that acknowledgement coupled with Wells' prior

criminal conviction were insufficient for the purpose of establishing a genuine issue of material fact that Wells had an ulterior purpose or motive not proper for the normal prosecution of the case. "[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Lake County Trust Co. v. Wine,* 704 N.E.2d 1035, 1041–42 (Ind.Ct.App. 1998). Wells' claims against the Bernitts were carried out to their authorized conclusion. The trial court did not err.

Affirmed.

RILEY, J., and BAILEY, J., concur.